# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

**F I L E D**
JUN 1 2 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

JOSHUA L. DAVIS

(Name and Address of Defendants)

**CRIMINAL COMPLAINT**

CASE NUMBER:

0 8 C R 5 0 0 2 6

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about June 12, 2008, at Sterling, in the Northern District of Illinois, JOSHUA L. DAVIS, defendant herein:

(Track Statutory Language of Offense)

> knowingly and intentionally did possess with intent to distribute controlled substances, namely approximately grams of 399.5 grams of mixtures containing cocaine and approximately 10.9 grams of mixtures containing cocaine base, Schedule II Narcotic Drug Controlled Substances, and 49.4 grams of mixtures containing methylenedioxymethamphetamine, a Schedule I Narcotic Drug Controlled Substance;

in violation of Title 21, United States Code, Section 841(a)(1). I further state that I am a FBI Special Agent and that this complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   x  Yes  ___ No

Signature of Complainant
Susan Hanson, Special Agent, FBI

Sworn to before me and subscribed in my presence,

June 12, 2008                                    at  Rockford, Illinois
Date                                                  City and State

P. Michael Mahoney, U.S. Magistrate Judge
Name & Title of Judicial Officer                      Signature of Judicial Officer

| | |
|---|---|
| NORTHERN DISTRICT OF ILLINOIS | ) |
| | ) ss. |
| WESTERN DIVISION | ) |

## AFFIDAVIT

I, SUSAN HANSON, being first duly sworn on oath, state that:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been so employed for the past 12 years.

2.  I am currently assigned to the Rockford FBI office where my duties include investigating violations of Title 21, United States Code, Sections 841(a)(1) and 846, which, among other things, make it federal crimes to distribute and possess with intent to distribute controlled substances, including cocaine, and to conspire to commit those offenses. I have been involved in numerous investigations of drug trafficking and have worked closely with state and local police agencies investigating drug trafficking activities. In addition to my experience as a FBI Special Agent, I have received training in drug enforcement from the FBI.

3.  This affidavit is submitted in support of the attached complaint. Other federal and local law enforcement officers have participated in this investigation and I have discussed the results of their investigation into this matter with them. This affidavit is based in part upon those discussions as well as my own investigation and observations. I have reviewed this affidavit and its contents and it is true and correct to the best of my knowledge. This affidavit does not contain all of the information concerning the investigation that is known to me, but sets forth only those relevant facts necessary to establish probable cause that the defendant committed the offense charged in the complaint. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

4. Special Agents of the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA"), Sterling, Illinois Police Department officers and other officers and agents (hereinafter collectively "investigating agents") are conducting an ongoing federal criminal investigation of Joshua Davis (hereinafter "Davis") and others regarding possible violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846. Davis resides at 503 ½ Sixth Avenue, Sterling, Illinois. (hereinafter "503 ½ Sixth Avenue"). 503 ½ Sixth Avenue is a one bedroom apartment located on the second floor of a two story, wood framed structure, with tan colored siding, with an entrance facing 6th Avenue with three wooden steps leading up to a porch and a door with "503 ½" in black letters on the wall to the right of the door that opens to a stairway which leads to an entry door to the apartment on the second floor of the building.

5. On June 21, 2007, at approximately 6:50 p.m., a FBI confidential source (hereinafter "FBI-CI") met with Sterling Police Sergeant John Trancoso and me in Sterling, Illinois. I provided the FBI-CI with $1,500 to use to purchase crack cocaine from an associate of Joshua Davis (hereinafter referred to as "Individual A." Sergeant Trancoso conducted a strip search of the FBI-CI and did not locate any contraband. At approximately 7:25 p.m. I rode with the FBI-CI in the CI's vehicle to 412 5th Avenue in Sterling. The FBI-CI and I entered the upstairs apartment at 412 5th Avenue (hereinafter referred to as the "CI's apartment") where I provided the FBI-CI with an audio recording device which I activated. I searched the CI's vehicle for contraband and found none. At approximately 7:41 p.m. the FBI-CI was kept under surveillance by law enforcement agents as the FBI-CI walked from 412 5th Avenue to 710 5th Avenue. At approximately, 7:44 p.m., Sterling Police Officer Pat Bartel saw the FBI-CI enter the residence at 710 5th Avenue. At approximately 7:50 p.m., Sergeant Trancoso observed a green 1996 Pontiac with Illinois registration G516985 park

2

near 710 5th Avenue. Illinois Secretary of State records show that vehicle is registered to Shelby Reavy, 509 ½ 3rd Avenue, Rock Falls, Illinois. Officer Bartel observed two black males and a white female get out of the vehicle and enter the residence at 710 5th Avenue. At approximately 7:56 p.m., Officer Bartel observed a white 1987 Mercedes Benz four door vehicle with Illinois registration 8827331 park in the 700 block of 5th Avenue (hereinafter referred to as the "white Mercedes"). Illinois Secretary of State records show that the Mercedes is registered to Joshua L. Davis. Inspector Alex Chavira of the Sterling Police Department observed a black male get out of the Mercedes and walk toward 710 5th Avenue and talk with two black males who came out of that residence in the front yard. At approximately 8:05 p.m., Inspector Chavira observed the FBI-CI standing on the porch of the residence at 710 5th Avenue as two black males left in the white Mercedes. At approximately 9:00 p.m., Sergeant Trancoso saw the FBI-CI get out of the white Mercedes in the 400 block of 5th Avenue and enter the residence at 412 5th Avenue.

6.  After the FBI-CI returned to the CI's apartment, the FBI-CI provided me with a baggie containing approximately 57 grams of what appeared to be crack cocaine. I conducted a field test of the substance in the baggie which was positive for the presence of cocaine. The FBI-CI told me that when the FBI-CI arrived at 710 5th Avenue, Individual A was not present but another individual (hereinafter referred to as "Individual B") allowed the FBI-CI into the residence. Individual A arrived a few minutes later with "Shelby," the white female who lived there, and another black male that the FBI-CI did not know. The FBI-CI told Individual A that the FBI-CI had $1,500 to buy two ounces of crack cocaine. The FBI-CI told Individual A that he should take his cut from the $1,500 because the FBI-CI needed the entire two ounces of crack cocaine. The FBI-CI gave the $1,500 to Individual A. The FBI-CI watched Individual A contact his supplier using the CI's

3

phone which is assigned phone number (773) 719-0677 (hereinafter "CI's phone"). Records from the CI's phone show two calls between the CI's phone and Joshua Davis's phone on June 21, 2007. One call occurred at 7:32 p.m. and the other occurred at 7:47 p.m. A few minutes after that phone call, a black male arrived at the residence driving a white Mercedes and talked to Individual A. Individual A addressed this individual as "JD" or "JB" who the FBI-CI later identified as Joshua Davis (hereinafter referred to as "Davis"). After Individual A talked to Davis for a short period of time, he left in the Mercedes.

7. While waiting for Davis to return, the FBI-CI asked Individual A about the quality of crack cocaine that Davis would be supplying. The FBI-CI told me that Individual A assured him that Davis would provide quality cocaine. Davis returned in the white Mercedes approximately 30 minutes later. The FBI-CI said that when Davis came into the house, Individual A and Davis entered the bathroom. A few seconds later, Davis came out of the bathroom and the FBI-CI went in and met with Individual A. While in the bathroom, Individual A gave the FBI-CI a clear baggie containing the approximately two ounces of crack cocaine. Individual A told the FBI-CI that he made approximately $300 on the deal. After the FBI-CI received the crack he asked Davis for ride. Davis gave the FBI-CI a ride and dropped him off at 412 5th Avenue. At approximately 9:15 p.m. on June 21, 2007, the FBI-CI and I left the CI's apartment in the CI's vehicle and went to a secure location. At approximately 9:33 p.m., Sergeant Trancoso searched the FBI-CI at the secure location and did not locate any contraband.

8. On July 25, 2007, the FBI-CI met with Individual A and Davis at Individual A's residence at 606 W. 5th Street, Sterling, Illinois (hereinafter "Individual A's residence"). During that meeting, Davis told the FBI-CI that he had one ounce of crack cocaine that he could sell to the CI.

Individual A stated that he wanted to be involved in the deal but that he did not have any money. At approximately 4:40 p.m., I met with the FBI-CI in Sterling. Sergeant Trancoso was also present. At that time, Sergeant Trancoso conducted a strip search of the FBI-CI and did not locate any contraband. After the search was completed, I provided the FBI-CI with $900 to use to purchase crack cocaine from Davis. At approximately 4:58 p.m., I drove the FBI-CI to the CI's apartment in my undercover vehicle. At approximately 5:11 p.m., the FBI-CI made a recorded telephone call to Davis phone in my presence. During that conversation, the FBI-CI told Davis that the FBI-CI was "ready," meaning that the FBI-CI was ready to purchase one ounce crack cocaine from Davis as they had previously agreed. The FBI-CI told Davis to come to 412 5th Avenue and to leave Individual A out of the deal. Davis told the FBI-CI that he would be there in 15 minutes.

9. At approximately 5:37 p.m., Sergeant Trancoso and other law enforcement agents saw a maroon vehicle with Illinois Registration G478381 known to used by Individual A park in the 400 block of 5th Avenue. Illinois Secretary of State records show that vehicle is registered to Jessica Dirks. Individual A is the father of Dirks' child. I had previously provided the FBI-CI with an audio recording device, which I activated. Sergeant Trancoso and other agents observed the FBI-CI leave 412 5th Avenue and meet with Individuals A and B near Individual A's vehicle. At approximately 5:53 p.m., Sergeant Trancoso and other agents observed a maroon Cadillac with temporary Illinois registration 704H705 drive northbound on the 400 block of 5th Avenue. Illinois Secretary of State records show that the vehicle is registered to Dana Davis, 407 Avenue D, Sterling, Illinois. At approximately 5:56 p.m., Sergeant Trancoso and other agents observed Davis walk into the apartment building at 412 5th Avenue and the FBI-CI follow him into the building immediately thereafter. Inspector Chavira saw an unknown black male enter the building at 412 5th Avenue at

5

approximately 5:57 p.m. At approximately 5:58 p.m., the FBI-CI came back to the CI's apartment where I was waiting for him and provided me with the two plastic baggies containing approximately 27.8 grams of crack cocaine. Sergeant Trancoso later conducted a field test which was positive for the presence of cocaine. At approximately 5:59 p.m., Sergeant Trancoso and other agents saw the FBI-CI and Davis leave 412 5th Avenue. The FBI-CI returned to Individual A's vehicle and spoke to Individual A. Sergeant Trancoso saw Davis get into the maroon Cadillac and leave the area. At approximately 6:05 p.m., Inspector Chavira saw Individuals A and B get into Individual A's vehicle and leave the area.

     10.    At approximately 6:06 p.m., the FBI-CI reentered the CI's apartment and met with me. During that meeting, the FBI-CI told me that when he followed Davis into the first floor hallway of the apartment building at 412 5th Avenue, another unknown black male followed the FBI-CI into the building as well. The FBI-CI asked this man who he was and the man told the FBI-CI that he was "B." Davis then removed a big baggie and four smaller baggies from his front pocket. These baggies contained what the FBI-CI believed to be crack cocaine. Davis handed the large baggie and one of the small baggies to the CI. Davis asked the FBI-CI "how much you gonna hit me for this?" The FBI-CI told Davis $800. Davis told the FBI-CI he wanted a "stack," meaning $1,000. The FBI-CI told Davis that he only had $900. Davis asked the FBI-CI if was going to "shop" with Davis. The FBI-CI told Davis that he was going to shop with him and handed Davis the $900. Davis told the FBI-CI to block the doorway. The FBI-CI then observed "B" take $100 out of his sock and give it to Davis. The FBI-CI saw Davis give B. what the FBI-CI believed to be crack cocaine from one of the small baggies. Davis and B. left the building and the FBI-CI went directly to the CI's apartment and provided me with the two baggies containing crack cocaine. At approximately 6:14 p.m., the FBI-CI and I left the apartment to meet with Sergeant Trancoso at a secure location and

entered my undercover vehicle. At approximately 6:15 p.m., I observed Individual A's vehicle return to the 400 block of 5th Avenue. I observed the FBI-CI leave my vehicle and have a brief conversation with Individual A. The FBI-CI returned to my vehicle and I drove the FBI-CI to the secure location. Sergeant Trancoso searched the FBI-CI at the secure location and did not locate any contraband.

11. On August 3, 2007, the FBI-CI had an in person recorded conversation with Davis outside of Individual A's residence. During that conversation, Davis agreed to sell the FBI-CI at least two ounces of crack cocaine. At approximately 5:04 p.m., Sergeant Trancoso and I met with the FBI-CI in Sterling. At that time, Sergeant Trancoso conducted a strip search of the FBI-CI and did not locate any contraband. After the search was completed, I provided the FBI-CI with $2,500 to use to purchase crack cocaine from Davis. At approximately 4:58 p.m., I rode with the FBI-CI in the CI's vehicle to the CI's apartment in my undercover vehicle. At approximately 5:53 p.m., the FBI-CI made a recorded telephone call to Davis's phone in my presence and spoke with Davis. During that conversation, Davis told the FBI-CI that he would be coming to the CI's apartment. At approximately 6:17 p.m., Sergeant Trancoso observed Davis driving a maroon 1999 Cadillac with Illinois temporary registration 704H705 east on 6th Street and park in the alley at the rear of 503 6th Avenue. That vehicle, according to Illinois Secretary of State records, is registered to Dana Davis, 407 Avenue D, Sterling, Illinois. At approximately 6:23 p.m., Davis called the FBI-CI and told the FBI-CI to meet him in the alley behind the CI's apartment. At that time, I provided the FBI-CI with an audio recording device and activated it.

12. At approximately 6:25 p.m., the FBI-CI and I left the apartment building. I observed the FBI-CI walk toward the alley behind 503 6th Avenue. At approximately 6:27 p.m., Lieutenant Doug Fargher saw the FBI-CI meet with a person near the rear of 503 6th Avenue. At approximately

7

6:30 p.m., Sergeant Trancoso saw that the maroon Cadillac that Davis arrived in was empty. At approximately 6:36 p.m., Sergeant Trancoso saw the FBI-CI walking from the backyard of 503 6th Avenue and enter the building at 412 5th Avenue. At approximately 6:38 p.m., the FBI-CI entered the CI's apartment and gave me a plastic baggie containing approximately 64.4 grams of crack cocaine. At approximately 6:45 p.m., Sergeant Trancoso observed Davis driving the maroon Cadillac leaving the alley behind 503 6th Avenue and drive west on East 6th Street. At approximately 6:51 p.m., the FBI-CI and I left 412 5th Street and went to a secure location in Sterling. At approximately 7:16 p.m., Sergeant Trancoso searched the FBI-CI at the secure location and did not locate any contraband. The FBI-CI returned $900 to me at that time.

13. After the FBI-CI returned to the CI's apartment, the FBI-CI told me that when he went over to the alley behind 503 6th Avenue and met with Davis, Davis led the FBI-CI through a rear door of the building and up the stairs to a one-room apartment which is 503 ½ 6th Avenue. Davis opened a cabinet in an entertainment center and took out a bag of what the FBI-CI believed to be crack cocaine. Davis broke a chunk of the crack cocaine off and weighed it using a scale he took out of the same cabinet. Davis weighed two ounces of crack on the scale and gave the two ounces to the FBI-CI in a plastic baggie. The FBI-CI and Davis discussed the price and eventually the FBI-CI paid Davis $1,600 for the two ounces of crack cocaine. The FBI-CI left the apartment and returned to the CI's apartment and gave me the two ounces of crack cocaine. Sergeant Trancoso later conducted a field test of the substance in that Davis sold the FBI-CI on August 3, 2007, which was positive for the presence of cocaine.

14. On September 26, 2007, the FBI-CI had an unrecorded conversation with Davis at a residence at 403 East 5th Street, Sterling, Illinois. When Davis arrived at residence, he was driving a 1996 green Chevrolet Caprice with Illinois registration 907H250. Illinois Secretary of State

records show that vehicle is registered to Joshua Davis, 407 Avenue D, Sterling, Illinois (this vehicle will hereinafter be referred to as "Davis's 1996 Chevrolet Caprice"). The FBI-CI asked Davis if he could sell the FBI-CI four and one-half meaning four and one-half ounces of crack cocaine. Davis said he had one 63 meaning 63 grams of crack cocaine. Davis asked the FBI-CI when the FBI-CI would have the money and the FBI-CI told Davis that the FBI-CI would have the money after 5:00 p.m. Davis told the FBI-CI that he would have the other 63 (grams) by then and that the price would be $3,000. Davis did not tell the FBI-CI where he was going to get the rest of the crack cocaine.

15.     On September 27, 2007, at approximately 1:38 p.m., Sergeant Trancoso and I met with the FBI-CI in Sterling. At that time, Sergeant Trancoso conducted a strip search of the FBI-CI and did not locate any contraband. After the search was completed, I provided the FBI-CI with $3,300 to use to purchase crack cocaine from Davis. At approximately 1:46 p.m., I drove the FBI-CI to the CI's apartment in my undercover vehicle. While in my undercover vehicle at approximately 1:53 p.m. and 1:56 p.m., the FBI-CI made recorded telephone calls to Davis's phone in my presence. The calls were not answered. At approximately 2:08 p.m., Davis, using Davis's phone, called the CI. During that recorded conversation, Davis told the FBI-CI to call when the FBI-CI is in Sterling. At approximately 2:30 p.m., Davis called the FBI-CI using Davis's phone and told the FBI-CI that he was at the apartment. At 2:36 p.m. the FBI-CI and I arrived at 412 5th Street and went into the CI's apartment. At approximately 2:40 p.m., Sergeant Trancoso saw the FBI-CI outside of 412 5th Avenue talking on a cellular phone. At approximately 2:44 p.m., Sterling Police Detective Steve Hubbard saw the FBI-CI go back inside 412 5th Avenue. At approximately 2:51 p.m., Detective Hubbard saw Davis driving Davis's 1996 Chevrolet Caprice, park on the 400 block of 5th Avenue, get out and enter the building at 412 5th Avenue. At approximately 2:53 p.m., Detective Hubbard saw the FBI-CI and Davis talking in the yard of 412 5th Avenue, near the street. At approximately

2:54 p.m., Sergeant Trancoso saw the FBI-CI enter the building at 412 5th Street and Davis get into the Chevrolet Caprice and drive away. The FBI-CI re-entered the CI's apartment and met with me. The FBI-CI told me that Davis told him that he had the cocaine to sell to the FBI-CI but that he needed to cook it.

16. At approximately 3:00 p.m., the FBI-CI made a recorded call Davis's phone and talked to Davis. The FBI-CI told Davis to split the crack cocaine into two separate bags because the FBI-CI was going to give one to a guy in Rockford and keep the other bag to sell. The FBI-CI made two additional recorded calls to Davis's phone, one at 4:00 p.m. and one at 4:30 and talked to Davis. During those recorded calls the FBI-CI asked Davis when he would return with the crack cocaine and Davis told the FBI-CI that he was still cooking it. At approximately 4:55 p.m., Detective Hubbard observed Davis drive south on 5th Avenue past 412 5th Avenue. At approximately 4:58 p.m., Detective Hubbard observed Davis approach 412 5th Avenue on foot and enter the building. Detective Hubbard observed the FBI-CI in the doorway waiting for Davis. At approximately 5:02 p.m., Detective Hubbard saw Davis leave 412 5th Avenue.

17. After Davis left the building, the FBI-CI returned to the CI's apartment and provided me with two plastic baggies which contained what appeared to be crack cocaine. The first baggie contained approximately 58 grams and the second baggie contained approximately 34 grams. Sterling Police Detective Jason Bielema conducted field tests of the substances in both baggies and the results were positive for cocaine for both of them. At approximately 5:05 p.m., the FBI-CI and I left 412 5th Street and went to a secure location in Sterling. At approximately 5:28 p.m., Detective Bielema searched the FBI-CI at the secure location and did not locate any contraband. The FBI-CI returned $830 to me at that time. The FBI-CI told me that when Davis arrived at 412 5th Street he

provided the FBI-CI with the two baggies containing crack cocaine. The FBI-CI said that Davis charged him $2,470 for the crack cocaine.

18. On June 10, 2008, I spoke to a Illinois State Police cooperating individual (ISP-CI) who was incarcerated at the Whiteside County Jail on state of Illinois felony (Class X) charge that alleged that he delivered or possessed with the intent to distribute cocaine within 1000 feet of a school. The ISP-CI told me that he has known Davis for more than 15 years and that he had purchased cocaine from Davis on at least 50 prior occasions during that time. The ISP-CI stated that he had purchased approximately 7 grams of cocaine from Davis at Davis's residence at 503 ½ 6th Avenue on June 7, 2008. While inside 503 ½ 6th Avenue, the ISP-CI observed what appeared to be approximately 250 grams of cocaine which was packaged inside a gallon size plastic bag which was contained in a plastic shopping bag. The ISP-CI recognized the substance as cocaine based on the ISP-CI's prior experience in purchasing cocaine on 50 prior occasions from Davis. The ISP-CI observed the approximately 250 grams of cocaine on a table in the corner of living room of the apartment. The ISP-CI saw Davis remove the gallon size bag from the plastic shopping bag and take approximately 7 grams of cocaine out of the plastic bag and place it on a scale. Davis then sold the CI the 7 grams of cocaine for $260. When I spoke to the ISP-CI, the ISP-CI described Davis's apartment as being on the second floor with one bedroom. The ISP-CI also observed plastic baggies on the same table as the scale and the 1/4 kilogram of cocaine.

19. The ISP-CI was arrested for possession of cocaine with the intent to distribute cocaine within 1000 feet of a school in Whiteside County on June 9, 2008. The ISP-CI has previously been convicted of the following felony offenses: a) Armed Robbery in Whiteside County in 1998 and was sentenced to 6 years in the Illinois Department of Corrections; b) Selling Controlled Substances to an individual under 18 years of age in Whiteside County in 2003 and was sentenced to 9 years in the

11

Illinois Department of Corrections. Officers from the Illinois State Police have informed me that the ISP-CI provided them information on June 9, 2008 regarding other criminal investigations which was accurate based on corroboration by other sources of information. I am unaware of any other occasions where the ISP-CI has provided information to law enforcement officers.

20. On June 11, 2008, the United States' application for a search warrant for the upstairs apartment at 503 1/2 6th Avenue, Sterling, Illinois was granted and a search warrant was signed by United States Magistrate Judge P. Michael Mahoney. On June 12, 2008, at approximately 6:00 a.m., FBI Special Agents and Illinois State Police and other local law enforcement officers executed the search warrant at 503 ½ 6th Avenue. At the time the search warrant was executed there were no occupants inside the residence. During the search of the residence, agents and officers seized a white plastic shopping bag from the top of an aquarium in the northeast corner of the living room. The white plastic bag contained a gallon size clear plastic bag which further contained approximately 380 grams of a white powdery substance that field tested positive for the presence of cocaine. Agents and officers also seized a brown leather purse which contained two plastic bags containing approximately 10.9 grams of what appeared to crack cocaine based on my training and experience. I later field tested a small portion of the 10.9 grams of crack cocaine and received a positive result indicating the presence of cocaine. In addition, the brown purse also contained a plastic bag which contained approximately 19.5 grams of a white powdery substance which later field tested positive for the presence of cocaine as well. Agents and officers also seized two handguns, a Colt Anaconda, .44 caliber revolver handgun and a "speed loader," a device which allows the loading of six rounds of ammunition into the revolver at one time rather than individually, in a plastic case, and a 9 mm Luger handgun from a cabinet in the kitchen of the residence. In addition, the agents and officers seized 49.4 grams of pills which appeared to be methylenedioxymethamphetamine (commonly referred to as ecstasy) which field tested positive for the presence of methamphetamine.

12

21.   Agents and officers also seized items from the apartment indicating that Joshua Davis resided at 503 ½ 6th Avenue, Apt. C, including a bank statement addressed to Joshua Davis at that address. Agents and officers also seized items that based on my training and experience are associated with the distribution of controlled substances, including a box of plastic baggies and three boxes of baking soda from the kitchen of the residence. Agents and officers also seized a cooking pot from the stove in the kitchen which appeared to have been used to "cook" crack cocaine. Baggies are commonly used to package controlled substances for sale. Baking soda is commonly used to convert powder cocaine into crack cocaine through a process which involves mixing the baking soda with the powder cocaine and heating it, typically on a stove in a pan or pot. Agents and officers also seized two digital scales from the top of the aquarium in the living room where the 380 grams of cocaine was located. Agents and officers also seized $135 in United States currency from a table in the northeast corner of the living room and $9,605 in United States currency from a box or chest in the closet of the bedroom of the residence.

22.   After the search warrant was executed, agents and officers attempted to locate Joshua Davis in Sterling, Illinois. At approximately 7:10 a.m., on June 12, 2008, Joshua Davis appeared at the Sterling Police Department and was taken into custody. At the time of his arrest, he was in possession of a driver's license issued by the Illinois Secretary of State which listed his address as 503 ½ 6th Avenue, Apt. C, Sterling, Illinois.

23. The information contained within this affidavit is true and correct to the best of my knowledge and belief.

*Susan M. Hanson*
SUSAN HANSON
Special Agent
Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN TO BEFORE ME THIS __12th__ DAY OF JUNE, 2008.

*P. Michael Mahoney*
P. MICHAEL MAHONEY
United States Magistrate Judge
Northern District of Illinois, Western Division

14